PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DAVID C. ANDERSON; SAMUEL
PULLEN, on behalf of themselves and
all others similarly situated,
          *Plaintiffs-Appellants,*

          v.

SARA LEE CORPORATION,
          *Defendant-Appellee,*

          and

DOES 1-100, Inclusive,
          *Defendants.*

No. 05-1091

Appeal from the United States District Court
for the Eastern District of North Carolina, at New Bern.
Malcolm J. Howard, Senior District Judge.
(CA-03-31-H)

Argued: February 1, 2007

Decided: November 19, 2007

Before NIEMEYER and KING, Circuit Judges, and
WILKINS, Senior Circuit Judge.

Affirmed in part, vacated in part, and remanded with instructions by
published opinion. Judge King wrote the opinion, in which Judge Nie-
meyer and Senior Judge Wilkins joined.

## COUNSEL

**ARGUED:** Alvin Leonard Pittman, Los Angeles, California, for
Appellants. William Randolph Loftis, Jr., CONSTANGY, BROOKS

& SMITH, L.L.C., Winston-Salem, North Carolina, for Appellee. **ON BRIEF:** Robin E. Shea, CONSTANGY, BROOKS & SMITH, L.L.C., Winston-Salem, North Carolina, for Appellee.

---

**OPINION**

KING, Circuit Judge:

This appeal arises from a pay dispute between the defendant, Sara Lee Corporation, and the named plaintiffs, David C. Anderson and Samuel Pullen, as representatives of a class that includes approximately 1600 hourly production workers employed at Sara Lee's bakery in Tarboro, North Carolina (the "Class Members"). The Class Action Complaint alleges five claims under North Carolina law — for breach of contract, negligence, fraud, conversion, and unfair trade practices — each relating to Sara Lee's failure to compensate the Class Members for time spent complying with a mandatory uniform policy.

Early in the district court proceedings, Sara Lee sought dismissal of all five claims on the ground that they are preempted by the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 (the "FLSA") (creating enforceable federal rights to minimum wage and overtime compensation). The court rejected Sara Lee's preemption contention, but dismissed with prejudice three of the five claims — the fraud, conversion, and unfair trade practices claims — under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *See Anderson v. Sara Lee Corp.*, No. CA-03-31-H (E.D.N.C. Apr. 14, 2003) (the "Dismissal Order"). Following discovery, the court awarded summary judgment to Sara Lee under Rule 56(c) on the remaining contract and negligence claims. *See Anderson v. Sara Lee Corp.*, No. CA-03-31-H (E.D.N.C. Dec. 7, 2004) (the "Summary Judgment Order"). On appeal, the Class Members challenge the propriety of both the Dismissal Order and the Summary Judgment Order, which Sara Lee defends on various grounds, including FLSA preemption.

As explained below, we affirm the district court's dismissal with prejudice of the conversion and unfair trade practices claims. We con-

clude, however, that the court should have dismissed the contract, negligence, and fraud claims as preempted by the FLSA. Accordingly, we vacate the court's alternative dispositions of those claims — the dismissal with prejudice of the fraud claim and the summary judgment awards on the contract and negligence claims — and remand with instructions to dismiss the claims without prejudice, giving the Class Members an opportunity to pursue any FLSA claims they may possess.

I.

A.

It is undisputed that, until early April 2003, Sara Lee enforced a so-called "Dress and Undress Rule" for hourly production workers at its Tarboro bakery, which makes cheesecakes, layer cakes, pastries, muffins, and other perishable goods. During the time period relevant to this civil action, the total number of Tarboro production workers at a given time varied between approximately 950 (the average number in 2000) and 650 (the average in the first part of 2003). These workers were divided into two shifts. Under the Dress and Undress Rule, they were required to wear a uniform consisting of the following: a shirt and pants (with a worker-provided belt), or an optional dress for women; a set of earplugs; a hairnet; and a pair of safety shoes. The shirts and dresses were personalized with the workers' names, and the uniforms, except the shoes, were washed and then sorted by employee number on a rotating conveyor in an on-site laundry room. The shoes were stored in personal lockers in men's and women's locker rooms.

To comply with the Dress and Undress Rule, production workers were to arrive at the bakery in street clothes, pass through security, walk to the laundry room, wait in line with their shiftmates, obtain their uniforms at the laundry room window from the lone attendant on duty (or occasionally retrieve their uniforms themselves), walk to the appropriate locker room, wait for space to change clothes, change into their uniforms, place their street clothes in their lockers, walk to a hand washing and foot bath area, wash and sanitize their hands and shoes, and walk to the time clock inside the production area — all before clocking in and taking their places on the production line. At the end of the shift, the workers clocked out, then walked back to the

locker room, changed into their street clothes, walked to the laundry room, and deposited their soiled uniforms into a bin before leaving the bakery.

While the Dress and Undress Rule was in effect, the production workers had to worry about committing two types of infractions. First, workers who failed to comply with the Dress and Undress Rule were prohibited from working the shift. Second, workers who clocked in late because of delays in the clothes-changing process were deemed tardy; those who accumulated twenty citations for tardiness in a twelve-month period were discharged. The Dress and Undress Rule was revised in early April 2003 to allow workers to don their uniforms (except their safety shoes) at home.

## B.

The Class Action Complaint was filed in January 2003 in the Superior Court of Edgecombe County, North Carolina, on behalf of current and former hourly production workers at the Tarboro bakery who were subject to the Dress and Undress Rule and entitled to FLSA protections.[1] It alleges that, by failing to compensate workers for time spent complying with the Dress and Undress Rule, Sara Lee violated the "applicable wage and hour law," i.e., the FLSA. *See* Class Action Complaint ¶ 48. The Complaint does not, however, plead claims directly under the FLSA. Rather, it pleads five separate claims under North Carolina law for breach of contract, negligence, fraud, conversion, and unfair trade practices in contravention of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 (the "UDTPA"). The Complaint seeks recovery of, inter alia: compensatory damages, including back pay; penalties and interest; punitive damages; and, with respect to the unfair trade practices claim, treble damages and attorneys' fees pursuant to the UDTPA. The Class Members maintain that they are entitled to damages for the period from January 27, 2000, through April 1, 2003 (when the Dress and Undress Policy was revised).

---

[1] The Class Action Complaint is found at J.A. 13-28. (Our citations to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

On February 26, 2003, Sara Lee removed this action, under 28 U.S.C. § 1441, to the Eastern District of North Carolina.[2] Shortly thereafter, on March 3, 2003, Sara Lee made its motion, under Federal Rule of Civil Procedure 12(b)(6), to dismiss the Class Action Complaint for failure to state a claim upon which relief can be granted. In support of the Rule 12(b)(6) motion, Sara Lee maintained that the FLSA preempted each of the Class Members' state claims and that, apart from being preempted, the claims were not cognizable. By its Dismissal Order of April 14, 2003, the district court rejected Sara Lee's preemption contention.[3] The court agreed, however, that the Complaint fails to state colorable claims for fraud, conversion, and unfair trade practices, and it therefore dismissed those three claims with prejudice. Finally, the court refused to dismiss the contract and negligence claims, based on its determination that those two claims were sufficiently pleaded in the Complaint. Significantly, the court recognized that the contract and negligence claims were predicated on violations of the FLSA, and that their ultimate success thus depended on a showing that the FLSA required Sara Lee to compensate its workers for time spent complying with the Dress and Undress Rule.

Thereafter, the parties engaged in discovery and stipulated to the certification of a class on the contract and negligence claims. On June

---

[2]In removing this action, Sara Lee invoked alternative grounds for subject matter jurisdiction, including diversity jurisdiction under 28 U.S.C. § 1332. Sara Lee alleged that diversity jurisdiction existed because it was a Maryland corporation with its principal place of business in Illinois, the named plaintiffs were citizens of North Carolina, and the amount in controversy exceeded $75,000. The Class Members did not challenge the removal, and we are satisfied that the district court properly exercised jurisdiction, in that it possessed diversity jurisdiction pursuant to § 1332 (as that statute existed in 2003) over at least one of the named plaintiff's claims. *See* 28 U.S.C. § 1332 (2000) (conferring jurisdiction over civil actions between citizens of different states where matter in controversy exceeds $75,000); *Rosmer v. Pfizer, Inc.*, 263 F.3d 110, 114 (4th Cir. 2001) (recognizing that, in class action, so long as one named plaintiff satisfies requirements for diversity jurisdiction, district court may exercise supplemental jurisdiction under 28 U.S.C. § 1367 over other class members' claims).

[3]The Dismissal Order is found at J.A. 62-75.

1, 2004, Sara Lee filed its motion, under Federal Rule of Civil Procedure 56, for summary judgment. In its supporting memorandum, Sara Lee reiterated its position that the contract and negligence claims are preempted by the FLSA. Additionally, Sara Lee contended that those claims must nonetheless fail, because the FLSA (on which they were predicated) did not require paying workers for compliance with the Dress and Undress Rule. Specifically, Sara Lee asserted that time spent complying with the Rule was noncompensable, pursuant to the Portal-to-Portal Act, 29 U.S.C. §§ 251-262 (excluding from FLSA compensability, in § 254(a), certain functions that are "preliminary" or "postliminary" to employees' "principal" work activities). Alternatively, Sara Lee recognized that, generally speaking, time spent by employees on the isolated act of changing clothes might be compensable under the FLSA, but that the time spent by the Class Members changing clothes was yet noncompensable because it was "de minimis."

On its de minimis point, Sara Lee acknowledged that the Class Members had forecast evidence, by way of the deposition testimony of the named plaintiffs, showing that "a single clothes change took as much as 20 minutes," J.A. 102, and that workers thus spent a total of "30-40 minutes a day on clothes-changing time alone," *id.* at 112. In discussing the Class Members' evidence, Sara Lee referred to excerpts from the named plaintiffs' deposition transcripts, which Sara Lee had attached to its summary judgment memorandum. *See id.* at 165-66 (testimony of David C. Anderson that it took him about fifteen minutes for pre-shift clothing change and fifteen minutes for all post-shift activities, including clothing change); *id.* at 181-83 (testimony of Samuel Pullen that pre- and post-shift clothing changes each took him fourteen to twenty minutes). Sara Lee characterized this testimony as "grossly exaggerated" and "patently outrageous," but conceded that it had to be accepted as true at the summary judgment stage of the proceedings. *Id.* at 102, 112.

Nevertheless, Sara Lee urged the court, in considering the de minimis issue, to ignore the actual time it took workers to change clothes (as established by the named plaintiffs' testimony) and to instead look at "the time that *should* reasonably have been required for changing clothes." J.A. 103. In this regard, Sara Lee presented a study conducted by its expert, who measured and averaged the time

taken by nine management employees — playing the part of hourly production workers — to engage in the clothes-changing process during a Saturday production shutdown. The time study concluded that the pre- and post-shift clothing changes for workers assigned the more-complicated pants uniform (with its shirt, pants, and belt) took an average of 3.12 minutes. The study further indicated that these workers needed just 7.33 minutes to complete pre-shift activities from donning their uniforms to clocking in, as well as post-shift activities from clocking out through changing back into their street clothes. The study did not address the time spent on activities occurring before and after the clothing changes, including standing in line at the laundry room window, obtaining uniforms from the attendant on duty, and depositing soiled uniforms into the laundry bin.

The Class Members filed a memorandum in opposition to the summary judgment motion, in which they contended that they were entitled to compensation for time spent on all of the activities encompassed in the Dress and Undress Rule. In support of their assertion that this time amounted to as much as sixty minutes per day (including forty-five minutes for pre-shift activities), they attached affidavits executed by sixty-seven separate hourly production workers. These affidavits used the same fill-in-the-blank form, and had not previously been provided to Sara Lee in discovery. The Class Members also attached excerpts of certain deposition transcripts, but not the excerpts from the named plaintiffs' deposition transcripts already discussed and submitted to the court by Sara Lee. The Class Members explained in their opposition memorandum that, because 200 to 300 employees sometimes arrived at the bakery within fifteen minutes of each other, there were often long waits at the laundry room window, in the locker rooms, at the hand washing and foot bath area, and at the time clock. Moreover, in anticipation of possible gridlock during the clothes-changing process, workers were compelled to arrive at the bakery as much as forty-five minutes before the start of their scheduled shifts in order to avoid tardiness citations.

As part of their opposition memorandum, the Class Members requested the court to exclude, pursuant to Federal Rule of Evidence 702, the time study prepared by Sara Lee's expert. The Class Members contended that the study — which reached its conclusions by measuring and averaging the time taken by nine management employ-

ees to go through the clothes-changing process during a Saturday pro-
duction shutdown — failed to "adequately replicate[ ] the situation
facing the [hourly production workers] when they are required to
comply with [the Dress and Undress Rule] in the real work-a-day
world." J.A. 256.

In reply to the Class Members' opposition memorandum, Sara Lee
moved to strike the Class Members' sixty-seven worker affidavits on
various grounds, including the failure to produce the affidavits during
discovery. The Class Members did not respond to Sara Lee's motion
to strike.

By its Summary Judgment Order of December 7, 2004, the district
court granted Sara Lee's motion to strike the sixty-seven worker affi-
davits, limited the admissibility of its expert time study, and granted
its motion for summary judgment on the contract and negligence
claims.[4] With respect to the sixty-seven worker affidavits, the court
concluded that exclusion of the affidavits was an appropriate sanction
for the Class Members' noncompliance with discovery deadlines. As
for Sara Lee's expert time study, the court expressed agreement with
the Class Members that the study failed to replicate the conditions
that sometimes protracted the clothes-changing process. Even so, the
court declined to wholly exclude the study, instead admitting it on a
limited basis, apparently for the purpose of estimating the time
needed by workers for the isolated acts of changing clothes and wash-
ing and sanitizing their hands and safety shoes (the "changing-and-
washing activities").

Finally, with respect to the contract and negligence claims, the
court again recognized that their viability depended on establishing
that Sara Lee was mandated by the FLSA to compensate the hourly
production workers for time spent complying with the Dress and
Undress Rule. The court determined that the Portal-to-Portal Act
excluded from FLSA compensability all Rule-related activities,
except perhaps the changing-and-washing activities. The court further
decided that those activities could not be compensable, however, if it
took a de minimis amount of time to perform them. *See* Summary
Judgment Order 26 (recognizing "general rule . . . that ten minutes or

---

[4]The Summary Judgment Order is found at J.A. 710-41.

less of uncompensated time will be *de minimis* as a matter of law"). And, the court adopted Sara Lee's reasonableness standard for the de minimis inquiry, ruling that the pertinent question was "how much time employees would *reasonably* spend donning and doffing their uniforms and walking through the footbath." *Id.* at 28 (emphasis added).

The evidence before the court on this issue was the named plaintiffs' deposition testimony and Sara Lee's expert time study. The court noted that, because the Class Members were entitled to have the evidence viewed in their favor, it gave the time study "minimal, if any, weight." Summary Judgment Order 29. Nonetheless, the court ignored the named plaintiffs' deposition testimony — relevant excerpts of which were attached to and discussed in Sara Lee's summary judgment memorandum — establishing that clothes-changing time alone was as much as thirty to forty minutes per day. And, because the Class Members had focused their arguments and evidence on the amount of time it took to fully comply with the Dress and Undress Rule, the court was left with no evidence showing that the particular time spent on the changing-and-washing activities was more than de minimis. Accordingly, the court awarded summary judgment to Sara Lee on the contract and negligence claims. The court then entered its final judgment on that same day (December 7, 2004).

On December 21, 2004, the Class Members filed a post-judgment motion, under Federal Rules of Civil Procedure 59(e) and 60(b), for reconsideration of the Summary Judgment Order. By its Order of February 8, 2005, the court denied the Class Members' motion for reconsideration.

## C.

The Class Members have timely appealed from both the final judgment and the denial of reconsideration, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.[5] On appeal, the Class Members chal-

---

[5]Prior to oral argument, we held this matter in abeyance for *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005) (assessing coverage of FLSA, as amended by Portal-to-Portal Act, with respect to activities of employees who must don protective clothing on employer's premises). We then directed the parties to file supplemental briefs addressing the effect of the *Alvarez* decision on the issues raised herein.

lenge the dismissal of their fraud, conversion, and unfair trade practices claims; the exclusion of the sixty-seven worker affidavits; the admission of Sara Lee's expert time study; and the award of summary judgment against them on their contract and negligence claims. In response, Sara Lee defends the district court's dismissal, evidentiary, and summary judgment rulings, but also asserts that the court should have deemed all of the Class Members' claims to be preempted by the FLSA.

We first address the dismissal with prejudice of the Class Members' fraud, conversion, and unfair trade practices claims. Although we agree with the district court's conclusion that the Class Members failed to state claims for conversion and unfair trade practices upon which relief can be granted, we disagree with its determination that the fraud claim is similarly deficient. We then turn to the issue of whether the remaining claims — for fraud, as well as breach of contract and negligence — are preempted by the FLSA. We conclude that they are so preempted. Accordingly, we affirm the dismissal with prejudice of the conversion and unfair trade practices claims, vacate the dismissal with prejudice of the fraud claim and the summary judgment awards on the contract and negligence claims, and remand with instructions to dismiss without prejudice the contract, negligence, and fraud claims as preempted by the FLSA.[6]

## II.

We first consider whether the district court properly dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Class Members' fraud, conversion, and unfair trade practices claims for failure to state a claim upon which relief can be granted. When a district court grants a Rule 12(b)(6) motion, we review its decision de novo. *See Bominflot, Inc. v. The M/V Henrich S*, 465 F.3d 144, 145 (4th Cir. 2006). In conducting this review, we "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atl. Corp. v. Twombly*, 127

---

[6]In these circumstances, we find it unnecessary to resolve the Class Members' appellate contentions — however compelling — on the merits of the district court's evidentiary and summary judgment rulings. The district court may deem it appropriate to revisit these rulings on remand.

S. Ct. 1955, 1965 (2007)). Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This "statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson*, 127 S. Ct. at 2200 (citing *Twombly*, 127 S. Ct. at 1964; *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotation marks and alteration omitted). Rule 9(b), however, imposes a heightened pleading standard for fraud claims, requiring that "[i]n all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity"; the Rule allows that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."[7]

In assessing the sufficiency of the claims alleged in the Class Action Complaint, the district court characterized "[t]he predicate act at issue in this litigation" — Sara Lee's failure to compensate production workers for time spent complying with the Dress and Undress Rule — as one "based on an interpretation or misinterpretation of" the FLSA. Dismissal Order 12. The court concluded that any misinterpretation of the FLSA was necessarily negligent, and not intentional. Accordingly, the court dismissed the fraud and conversion claims,

---

[7]Notably, in its recent decision in *Twombly*, the Supreme Court assessed the Rule 8(a)(2) sufficiency of a complaint brought under § 1 of the Sherman Act, 15 U.S.C. § 1. *See* 127 S. Ct. at 1961. In so doing, the Court utilized a "plausibility standard," *id.* at 1968, under which a complaint must contain "enough facts to state a claim to relief that is plausible on its face," *id.* at 1974. The Court also observed that the "no set of facts" language in its 1957 *Conley* decision — i.e., the oft-quoted statement of "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley*, 355 U.S. at 45-46 — has been subject to an unintended literal reading and, thus, "has earned its retirement." *Twombly*, 127 S. Ct. at 1969. In the wake of *Twombly*, courts and commentators have been grappling with the decision's meaning and reach. *See, e.g.*, *Iqbal v. Hasty*, 490 F.3d 143, 155 (2d Cir. 2007) (recognizing that "[c]onsiderable uncertainty concerning the standard for assessing the adequacy of pleadings has recently been created by" *Twombly*). In disposing of this appeal, there is no need for us to delve into or resolve any such issues.

because they each require a showing of wrongful intent. *See id.* at 10-11 (ruling that Complaint fails to allege intent to deceive, one element of fraud claim under North Carolina law); *id.* at 11-12 (concluding that Complaint fails to allege requisite intentional act in support of state law conversion claim). The court also dismissed the unfair trade practices claim, based on its determination that an intentional breach of contract — had one been alleged in the Complaint — "does not rise to the level of a deceptive or unfair business practice." *Id.* at 14.

A.

We disagree with the district court's ruling on the fraud claim. Under North Carolina law, the elements of actual fraud are "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Forbis v. Neal*, 649 S.E.2d 382, 387 (N.C. 2007) (internal quotation marks omitted). "Additionally, any reliance on the allegedly false representations must be reasonable." *Id.* The Class Action Complaint alleges that Sara Lee falsely promised the Class Members, at the time they were hired, to pay them for all time compensable under the FLSA — then and thereafter concealing the compensability of the time spent adhering to the Dress and Undress Rule. *See, e.g.*, Class Action Complaint ¶¶ 16, 21, 46. The Complaint further asserts that Sara Lee's false representations were reasonably calculated to deceive and, contrary to the ruling of the district court, were made with the intent to deceive. Indeed, the Complaint asserts that Sara Lee intentionally, consciously, and willfully refused to pay the Class Members for time spent on the pre- and post-shift clothing changes, despite being mandated by the FLSA to do so. *See id.* ¶ 48 ("Sara Lee had no intentions of keeping its promise [to pay the Class Members for all time compensable under the FLSA]."); *id.* ¶ 50 ("In conscious disregard of its promises, Sara Lee intended to require and receive from [the Class Members] services that are compensable under [the FLSA], without making payment of compensation to [them]."); *id.* ¶ 51 ("Sara Lee willfully failed and refused to pay . . . the Class Members for compensable time that they were required to work daily to conform to Sara Lee's dress requirements at the start and end of shifts."). The Complaint alleges that the Class Members were in fact deceived by Sara Lee's false representations, in that they complied with the Dress and

Undress Rule without compensation, and that they were thereby damaged, in that they sustained economic losses. *See id.* ¶¶ 21, 47, 53. Finally, the Complaint asserts that the "Class Members did not know and could not have reasonably discovered that they were entitled to compensation that was not being paid to them because of the comparative difference in power and knowledge between them and Sara Lee," and that they "reasonably relied on Sara Lee's promise to pay agreed upon hourly compensation." *Id.* ¶¶ 21, 47.

Simply put, the allegations of the Class Action Complaint are sufficient to state a claim for fraud under North Carolina law, even under the heightened pleading standard for fraud claims imposed by Rule 9(b). Moreover, although the evidence may ultimately show that any violation of the FLSA by Sara Lee was unintentional, we cannot agree with the district court's determination, at the Rule 12(b)(6) stage of the proceedings, that this was necessarily so. *Cf. IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 296 n.9 (4th Cir. 2007) (affirming district court's conclusion, at summary judgment stage, that employer's misclassification of employee as FLSA-exempt "was done in good faith" in view of ambiguity in applicable regulation). We therefore vacate the court's dismissal with prejudice of the Class Members' fraud claim.[8]

B.

We nonetheless affirm the district court's dismissal of the conversion and unfair trade practices claims. As Sara Lee correctly asserts, the Supreme Court of North Carolina has not recognized causes of action for conversion or unfair trade practices in employer-employee

---

[8]Tellingly, in defending the district court's dismissal of the fraud claim, Sara Lee does not rely (as the court did) on the proposition that the Class Action Complaint fails to allege the intent to deceive. Rather, Sara Lee maintains that the Complaint fatally omits an allegation of "detrimental reliance." Br. of Appellee 20-21 (citing, inter alia, *Briggs v. Mid-State Oil Co.*, 280 S.E.2d 501 (N.C. Ct. App. 1981); *Moore v. Wachovia Bank & Trust Co.*, 226 S.E.2d 833 (N.C. Ct. App. 1976)). As discussed above, however, the Complaint specifically asserts that the Class Members went unpaid for their compliance with the Dress and Undress Rule in reliance on Sara Lee's false representations that their time was not compensable under the FLSA.

disputes over unpaid wages such as this one, and there is no basis for concluding that it would do so if given the opportunity, including any decisions of the state's intermediate appellate court that might be persuasive. *See Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 512 (4th Cir. 1999) (acknowledging that federal court sitting in diversity must, in absence of controlling state authority, offer its best judgment about how state's highest court would rule on plaintiff's claims, giving appropriate weight to any opinions of state's intermediate appellate courts). This is not a circumstance in which the claims could have survived a Rule 12(b)(6) challenge but for the plaintiff's failure to plead sufficient facts to satisfy the requirements of Rule 8(a)(2) or Rule 9(b). Rather, the facts alleged — despite the arguably thorough manner in which they were pleaded — simply do not give rise to conversion or unfair trade practices claims under North Carolina law.

The Class Members essentially concede on appeal that the facts alleged do not constitute conversion, which has long been defined by the Supreme Court of North Carolina as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Peed v. Burleson's, Inc.*, 94 S.E.2d 351, 353 (N.C. 1956) (internal quotation marks omitted). And, although the Class Members make some attempt to establish the viability of their unfair trade practices claim, Sara Lee argues convincingly to the contrary. Under the UDTPA, it is unlawful to engage in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). The UDTPA "was intended to benefit consumers, but its protections extend to businesses in appropriate situations." *Dalton v. Camp*, 548 S.E.2d 704, 710 (N.C. 2001) (internal citation omitted). As Sara Lee emphasizes, the UDTPA "does not normally extend to run-of-the-mill employment disputes." *Id.*; *see also HAJMM Co. v. House of Raeford Farms, Inc.*, 403 S.E.2d 483, 492 (N.C. 1991) (observing that UDTPA "does not cover employer-employee relations" (citing *Buie v. Daniel Int'l Corp.*, 289 S.E.2d 118 (N.C. Ct. App. 1982) (holding that action based on employee's discharge for seeking workers' compensation benefits did not fall within scope of UDTPA))); *Durling v. King*, 554 S.E.2d 1, 4-5 (N.C. Ct. App. 2001) (concluding that UDTPA did not apply in employees' suit to recover

unpaid sales commissions). When the Supreme Court of North Carolina has allowed UDTPA claims in employer-employee disputes, it has been in circumstances not present in this case: for example, claims brought by employers against employees who engaged in conduct falling squarely within the UDTPA's intended reach. *See Sara Lee Corp. v. Carter*, 519 S.E.2d 308, 311-12 (N.C. 1999) (authorizing UDTPA claim based on self-dealing against purchasing agent who sold computer parts and services to employer at inflated prices); *United Labs., Inc. v. Kuykendall*, 370 S.E.2d 375, 388-89 (N.C. 1988) (recognizing that UDTPA may have been contravened with respect to former employee's violation of covenant not to compete). Accordingly, we affirm the district court's dismissal with prejudice of the Class Members' unfair trade practices claim, as well as of their conversion claim.[9]

## III.

We turn now to the issue of whether the Class Members' remaining claims — for breach of contract, negligence, and fraud — are preempted by the FLSA. The district court decided that those three claims are not so preempted. This issue constitutes a question of law that we review de novo. *See Cox v. Shalala*, 112 F.3d 151, 153 (4th Cir. 1997).

## A.

We are guided by longstanding principles of preemption in our assessment of whether the FLSA invalidates the Class Members' remaining claims. The Supremacy Clause of the Constitution renders federal law "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "As a result, federal statutes and regulations

---

[9]In addition to defending the district court's dismissals of the Class Members' fraud, conversion, and unfair trade practices claims, Sara Lee contends on appeal that the court could have dismissed the claims for breach of contract and negligence under Rule 12(b)(6), rather than waiting to render its Rule 56 summary judgment award on those two claims. We agree with the district court, however, that the Class Action Complaint sufficiently pleads the contract and negligence claims.

properly enacted and promulgated can nullify conflicting state or local actions." *College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 595 (4th Cir. 2005) (internal quotation marks omitted). Federal law may preempt state law under the Supremacy Clause in three ways — by "express preemption," by "field preemption," or by "conflict preemption." *See Pinney v. Nokia, Inc.*, 402 F.3d 430, 453 (4th Cir. 2005) (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992); *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985); *S. Blasting Servs., Inc. v. Wilkes County*, 288 F.3d 584, 590 (4th Cir. 2002)); *see also College Loan*, 396 F.3d at 595-96. For its contention that the FLSA preempts the Class Members' claims, Sara Lee invokes conflict preemption, which occurs when a state law "'actually conflicts with federal law.'" *S. Blasting*, 288 F.3d at 590 (quoting *Hillsborough*, 471 U.S. at 713).[10]

In assessing whether an actual conflict exists between state and federal law, "we resolve the more specific inquiries of whether 'it is impossible to comply with both state and federal law' or 'whether the state law stands as an obstacle to the accomplishment of the full purposes and objectives' of federal law." *Worm v. Am. Cyanamid Co.*, 970 F.2d 1301, 1305 (4th Cir. 1992) (quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984)). It is the existence of the latter circumstance, which we term "obstacle preemption," that Sara Lee asserts here.

Of course, our preemption inquiry must "'start[ ] with the basic assumption that Congress did not intend to displace state law.'" *S. Blasting*, 288 F.3d at 589 (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)); *see also Cipollone*, 505 U.S. at 516 ("Consideration of issues arising under the Supremacy Clause starts with the assumption that the historic police powers of the States are not to be superseded by Federal Act unless that is the clear and manifest purpose of

---

[10]In contrast to conflict preemption, express preemption takes place when "Congress expressly declares its intent to preempt state law," *Pinney*, 402 F.3d at 453, and field preemption occurs when Congress "'occup[ies] the field' by regulating so pervasively that there is no room left for the states to supplement federal law," *Cox*, 112 F.3d at 154. There is no question that express preemption and field preemption are inapposite to this dispute.

Congress." (internal quotation marks and alterations omitted)). The purpose of Congress is therefore the "ultimate touchstone" of a preemption analysis. *Cipollone*, 505 U.S. at 516 (internal quotation marks omitted). As a general proposition, the presumption that Congress did not intend to preempt state law is especially strong when it has legislated "'in a field which the States have traditionally occupied,'" such as "protecting the health and safety of their citizens." *S. Blasting*, 288 F.3d at 590 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (internal quotation marks omitted)); *see also Abbot v. Am. Cyanamid Co.*, 844 F.2d 1108, 1112 (4th Cir. 1988). And, the presumption is stronger still "against preemption of state remedies, like tort recoveries, when no federal remedy exists." *Abbot*, 844 F.2d at 1112 (citing *Silkwood*, 464 U.S. at 251).

## B.

With the above-stated legal principles in mind, we proceed with our assessment of Sara Lee's contention, under a theory of conflict preemption (or, more specifically, obstacle preemption), that the FLSA displaces the Class Members' contract, negligence, and fraud claims. Of significance to our inquiry, Congress enacted the FLSA to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The FLSA mandates that covered workers be paid a minimum wage, *see id.* § 206, and that they receive overtime compensation, *see id.* § 207.

As we have recognized, "the FLSA provides an unusually elaborate enforcement scheme." *Kendall v. City of Chesapeake*, 174 F.3d 437, 443 (4th Cir. 1999) (internal quotation marks omitted). With respect to the minimum wage and overtime compensation requirements, the FLSA's enforcement scheme includes the provision of criminal penalties for willful violations; the empowerment of the Secretary of Labor to supervise payment of unpaid wages due and to bring actions for unpaid wages, liquidated damages, and injunctive relief; and the authorization for workers to file private actions, in state or federal court, to recover unpaid wages, liquidated damages, and costs and attorney's fees. *See* 29 U.S.C. §§ 215-217. Pursuant to the Portal-to-Portal Act, an FLSA claim for minimum wages or overtime compensation is subject to a two-year limitations period, unless the claim

arises from "a willful violation," in which case a three-year limitations period applies. *See id.* § 255(a).

By contrast, the Class Members' claims for breach of contract, negligence, and fraud come with remedies that, in some respects, are more generous than those provided in the FLSA enforcement scheme. For example, the contract claim (even without proof of a willful failure to pay wages due) is arguably subject to a three-year limitations period, *see* N.C. Gen. Stat. § 1-52(1), and punitive damages may be awarded in North Carolina upon proof of fraud, malice, or willful or wanton conduct, *see id.* § 1D-15(a). Crucially, though, the Class Members' state claims all depend on establishing that Sara Lee violated the FLSA, either in good faith or willfully. *See, e.g.*, Class Action Complaint ¶ 31 (alleging, as part of negligence claim, that Sara Lee "carelessly" failed to pay Class Members wages due under FLSA); *id.* ¶¶ 38, 41 (asserting, as part of contract claim, that Sara Lee breached promise to pay FLSA-mandated wages); *id.* ¶ 51 (alleging, as part of fraud claim, that Sara Lee "willfully failed and refused to pay . . . Class Members for compensable time" under FLSA). Without doubt, these state claims essentially require the same proof as claims asserted under the FLSA itself.[11]

The issue before us is whether, in these circumstances, the Class Members' FLSA-based state claims "stand[ ] as an obstacle to the accomplishment of the full purposes and objectives of" the FLSA. *Worm*, 970 F.2d at 1305 (internal quotation marks omitted). There is a strong presumption that Congress, in enacting the FLSA for the benefit of workers, did not intend to override the States' traditional role in protecting the health and safety of their citizens. *See S. Blasting*, 288 F.3d at 590. And indeed, the FLSA contains a "savings clause" that expressly allows states to provide workers with more beneficial minimum wages and maximum workweeks than those mandated by the FLSA itself. *See* 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any . . .

---

[11]The Class Members have attempted to distinguish their contract claim from an FLSA claim on the ground that the contract claim arises from an affirmative promise to pay all wages due under the FLSA. This point is unavailing, since Sara Lee was required to comply with the FLSA whether it promised to or not.

State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter . . . ."); *see also Pettis Moving Co. v. Roberts*, 784 F.2d 439, 441 (2d Cir. 1986) ("Section 218(a) of the FLSA explicitly permits states to set more stringent overtime provisions than the FLSA." (internal citation omitted)).

The Class Members do not contend, however, that any North Carolina law entitles them to unpaid wages. Rather, as discussed above, they rely on the FLSA for their rights, and they invoke state law only as the source of remedies for the alleged FLSA violations. Importantly, the FLSA does not explicitly authorize states to create alternative remedies for FLSA violations. And, in view of the FLSA's unusually elaborate enforcement scheme, there cannot be the exceptionally strong presumption against preemption of such state remedies that would be warranted if the FLSA did not provide federal remedies. *See Abbot*, 844 F.2d at 1112. Nevertheless, in assessing whether the FLSA enforcement scheme preempts state remedies for FLSA violations, we must heed the Supreme Court's admonishment that "the mere existence of a federal regulatory or enforcement scheme" — even if the scheme is an appreciably detailed one — "does not by itself imply pre-emption of state remedies." *English v. Gen. Elec. Co.*, 496 U.S. 72, 87 (1990). And we must look for "'special features warranting pre-emption,'" *id.* (quoting *Hillsborough*, 471 U.S. at 719), such as the provision of exclusive remedies for enforcing rights expressly guaranteed by the federal statute, *see Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144 (1990).

Whether the FLSA provides exclusive remedies for the enforcement of its own provisions is a question that need not occupy us for long, because we already answered it in *Kendall*. There, we were called on to decide whether the plaintiffs could use 42 U.S.C. § 1983 to enforce their rights to overtime compensation under the FLSA. *Kendall*, 174 F.3d at 439. We recognized that the employer, as the party advocating preclusion of the plaintiffs' § 1983 claim, was required to "'make the *difficult showing* that allowing § 1983 actions to go forward would be inconsistent with Congress's carefully tailored scheme.'" *Id.* at 442 (quoting *Blessing v. Freestone*, 520 U.S. 329, 346 (1997)). Still, we agreed with the employer that the plaintiffs

could not enforce their FLSA rights by way of a § 1983 action, concluding, in relevant part, that "in the FLSA Congress manifested a desire to exclusively define the private remedies available to redress violations of the statute's terms." *Id.* at 443. We explained that Congress's intention to create exclusive remedies was clear in that "the FLSA mandates that the commencement of an action by the Secretary of Labor terminates an employee's own right of action" — a special feature of the FLSA's enforcement scheme, found in 29 U.S.C. § 216(b) and (c), that would be rendered superfluous if workers were able to circumvent that scheme while pursuing their FLSA rights. *Id.*

In accordance with our ruling in *Kendall*, we must hold today that Congress prescribed exclusive remedies in the FLSA for violations of its mandates. And we note that we are not alone in so concluding. *See Roman v. Maietta Constr., Inc.*, 147 F.3d 71, 76 (1st Cir. 1998) (citing *Tombrello v. USX Corp.*, 763 F. Supp. 541, 544-45 (N.D. Ala. 1991)); *Westfall v. Kendle Int'l, CPU*, No. 1:05-cv-00118, 2007 WL 486606, at *16 (N.D. W. Va. Feb. 15, 2007); *Lerwill v. Inflight Motion Pictures, Inc.*, 343 F. Supp. 1027, 1028-29 (N.D. Cal. 1972).

Because the FLSA's enforcement scheme is an exclusive one, we further conclude that the Class Members' FLSA-based contract, negligence, and fraud claims are precluded under a theory of obstacle preemption. Our conclusion is consistent with the rulings of several district courts deeming state claims to be preempted by the FLSA where those claims have merely duplicated FLSA claims. *See, e.g.*, *Choimbol v. Fairfield Resorts, Inc.*, No. 2:05cv463, 2006 WL 2631791, at *4-6 (E.D. Va. Sept. 11, 2006); *Moeck v. Gray Supply Corp.*, No. 03-1950, 2006 WL 42368, at *2 (D.N.J. Jan. 6, 2006); *Chen v. St. Beat Sportswear, Inc.*, 364 F. Supp. 2d 269, 292-93 (E.D.N.Y. 2005); *Morrow v. Green Tree Servicing, L.L.C.*, 360 F. Supp. 2d 1246, 1252-53 (M.D. Ala. 2005); *Sorensen v. CHT Corp.*, No. 03 C 1609(L), 2004 WL 442638, at *5-7 (N.D. Ill. Mar. 9, 2004); *Johnston v. Davis Sec., Inc.*, 217 F. Supp. 2d 1224, 1227-28 (D. Utah 2002); *Alexander v. Vesta Ins. Group, Inc.*, 147 F. Supp. 2d 1223, 1240-41 (N.D. Ala. 2001); *see also Roble v. Celestica Corp.*, No. 06-2934, 2006 WL 3858396, at *3 (D. Minn. Dec. 29, 2006) (suggesting that court would later deem state common law claims to be superseded by FLSA if discovery revealed that state claims were duplicative of FLSA claims); *Nettles v. Techplan Corp.*, 704 F. Supp. 95, 100

(D.S.C. 1988) (awarding summary judgment to employer on negligence claim as duplicative of FLSA claim, thereby implicitly ruling that negligence claim was FLSA-preempted). *But see Avery v. City of Talladega*, 24 F.3d 1337, 1348 (11th Cir. 1994) (allowing claim for breach of contract coterminous with FLSA claim); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F. Supp. 2d 551, 559-60 (D. Md. 2003) (concluding that state negligence claim did "not necessarily conflict with the purpose of the FLSA's remedial scheme, at least where a plaintiff seeks identical damages under both federal and state law").[12]

Finally, although Sara Lee presents FLSA preemption as a ground for affirming the final judgment rendered by the district court in its favor, we deem it more appropriate to remand the contract, negligence, and fraud claims for dismissal without prejudice as preempted by the FLSA. This will give the Class Members an opportunity to pursue any FLSA claims they may possess. *Cf. Pueschel v. United States*, 369 F.3d 345, 353 (4th Cir. 2004) (affirming dismissal without prejudice of Federal Tort Claims Act suit as preempted by Title VII); *Makar v. Health Care Corp. of the Mid-Atlantic (CareFirst)*, 872 F.2d 80, 81-82 (4th Cir. 1989) (vacating judgment for defendants on state common law claims preempted by Employee Retirement Income Security Act ("ERISA"), and remanding with directions to dismiss case without prejudice to any future ERISA action).

---

[12]The Ninth Circuit has suggested, without deciding, that "[c]laims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA." *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1154 (9th Cir. 2000). In the wake of *Williamson*, district courts in the Ninth Circuit have split over whether the FLSA preempts duplicative state law claims. *Compare Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1116-18 (S.D. Cal. 2006) (concluding that state claim was not preempted by FLSA), *and Bahramipour v. Citigroup Global Mkts., Inc.*, No. C 04-4440, 2006 WL 449132, at *4-7 (N.D. Cal. Feb. 22, 2006) (same), *with Flores v. Albertson's Inc.*, No. CV 01-00515, 2003 WL 24216269, at *5-6 (C.D. Cal. Dec. 9, 2003) (deeming state claims to be preempted by FLSA).

IV.

Pursuant to the foregoing, we affirm the Rule 12(b)(6) dismissals with prejudice of the conversion and unfair trade practices claims. We vacate the Rule 12(b)(6) dismissal with prejudice of the fraud claim, as well as the Rule 56 summary judgment awards on the contract and negligence claims, and remand with instructions to dismiss without prejudice those three claims as preempted by the FLSA.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED WITH INSTRUCTIONS*