**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

H&R BLOCK EASTERN ENTERPRISES,
INCORPORATED,

　　　　　　*Plaintiff-Appellant,*

　　　　　　v.

SARAH BLOOM RASKIN, In her
official capacity as Commissioner
of the Division of Financial
Regulation of the Maryland
Department of Labor, Licensing
and Regulation,

　　　　　　*Defendant-Appellee.*

No. 08-2162

H&R BLOCK EASTERN ENTERPRISES,
INCORPORATED,

　　　　　　*Plaintiff-Appellee,*

　　　　　　v.

SARAH BLOOM RASKIN, In her
official capacity as Commissioner
of the Division of Financial
Regulation of the Maryland
Department of Labor, Licensing
and Regulation,

　　　　　　*Defendant-Appellant.*

No. 08-2163

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, Senior District Judge.
(1:07-cv-01822-MJG)

Argued: October 29, 2009

Decided: January 15, 2010

Before MOTZ and KING, Circuit Judges, and
Anthony J. TRENGA, United States District Judge
for the Eastern District of Virginia, sitting by designation.

---

Vacated and remanded by published opinion. Judge King
wrote the opinion, in which Judge Motz and Judge Trenga
joined.

---

## COUNSEL

**ARGUED**: Jerrold Joseph Ganzfried, HOWREY, LLP,
Washington, D.C., for Appellant/Cross-Appellee. Jonathan R.
Krasnoff, OFFICE OF THE ATTORNEY GENERAL OF
MARYLAND, Baltimore, Maryland, for Appellee/Cross-
Appellant. **ON BRIEF:** Matthew M. Neumeier, Gabriel A.
Crowson, HOWREY, LLP, Chicago, Illinois; William Mur-
phy, Jr., Richard V. Falcon, THE MURPHY FIRM, Balti-
more, Maryland, for Appellant/Cross-Appellee. Douglas F.
Gansler, Attorney General of Maryland, Baltimore, Maryland,
for Appellee/Cross-Appellant.

---

## OPINION

KING, Circuit Judge:

In 2007, Plaintiff H&R Block Eastern Enterprises, Incorpo-
rated ("Block"), instituted a three-count civil action in the
District of Maryland, seeking declaratory and injunctive relief
with respect to enforcement of Maryland's Credit Services

Businesses Act (the "CSBA"). *See* Md. Code Ann., Com. Law §§ 14-1901 to -1916. More specifically, Block sought to bar the Commissioner of the Division of Financial Regulation of the Maryland Department of Labor, Licensing, and Regulation (the "Commissioner") from enforcing the CSBA against Block. In cross-motions for partial summary judgment, Block and the Commissioner each requested that the district court assume the CSBA applies to Block and decide whether federal law preempts the CSBA as to Block. In disposing of these motions, the district court assumed the applicability of the CSBA and awarded partial summary judgment to each party, ruling that certain of the CSBA's provisions are preempted. *See H&R Block E. Enters., Inc. v. Turnbaugh*, No. 1:07-cv-01822 (D. Md. July 30, 2008) (the "Memorandum Decision").[1]

Both parties appeal from the district court's Memorandum Decision and subsequent judgment. Block contends that the court erred by failing to declare the CSBA entirely preempted, while the Commissioner maintains that the court erred in finding any portion of the CSBA preempted. Nevertheless, before we can determine whether the CSBA is in any facet preempted, we must determine whether the district court erred in not analyzing, as the first step in the preemption analysis, whether the CSBA in fact applies to Block. As explained below, we conclude that the court erred in that respect and therefore vacate and remand.

I.

A.

Block, a Missouri corporation, is one of the largest tax-services providers in the United States. One of the products Block offers is a "refund anticipation loan" (an "RAL"),

---

[1]Block commenced this action against Commissioner Charles Turnbaugh. Shortly thereafter, Sarah Bloom Raskin, the named appellee and cross-appellant in this matter, replaced Turnbaugh as the Commissioner.

which is a short-term loan secured by a consumer's antici-
pated tax refund. Although Block provides its customers with
loan application forms, any RALs flowing therefrom are actu-
ally made by HSBC Bank U.S.A., N.A. ("HSBC Bank").
After evaluating a Block customer's loan application and
deciding to make an RAL, HSBC Bank forwards its loan dis-
bursement check to Block, which then delivers the check to
the borrower.

Between 2005 and 2007, the Commissioner repeatedly
threatened to enforce the CSBA against Block and other tax
preparers, asserting that businesses "arranging RALs who
receive a fee either from the lender or the consumer must
[comply with the CSBA]." J.A. 51.[2] Thus, on July 11, 2007,
Block filed its complaint in this matter (the "Complaint"),
seeking declaratory and injunctive relief with respect to the
Commissioner's view of the CSBA. In Count I of the Com-
plaint (the "Coverage Count"), Block alleged, and requested
the court to declare, that Block is not a "credit services busi-
ness" under the CSBA, thereby precluding application of the
CSBA to Block.[3] In the alternative, Block alleged in Counts
II and III (collectively, the "Preemption Counts") that the
National Bank Act, in conjunction with the regulations pro-

---

[2]Citations herein to "J.A. ___" refer to the contents of the Joint Appen-
dix filed by the parties in this appeal.

[3]The CSBA, by its terms, applies to a "credit services business," which
is defined therein as

> any person who, with respect to the extension of credit by others,
> sells, provides, or performs, or represents that such person can or
> will sell, provide, or perform, any of the following services in
> return for the payment of money or other valuable consideration:
>
>> (i) Improving a consumer's credit record, history, or rating
>> or establishing a new credit file or record;
>>
>> (ii) Obtaining an extension of credit for a consumer; or
>>
>> (iii) Providing advice or assistance to a consumer with regard
>> to either subparagraph (i) or (ii) of this paragraph.

Md. Code Ann., Com. Law § 14-1901(e)(1).

mulgated thereunder (collectively, the "NBA"), preempts the CSBA from being applied to Block.[4] Block thus requested that the court enter a declaratory judgment and enjoin the Commissioner from enforcing the CSBA against it.[5]

On April 25, 2008, Block moved for partial summary judgment, seeking such relief on the Preemption Counts only. In its supporting memorandum, Block requested that the district court "assume, *arguendo*, that Block is a 'credit services business' under the [CSBA] and that the statute applies to [RALs] . . . that Block customers obtain from HSBC Bank." J.A. 172. Block specified, however, that it did not "concede that it is a 'credit services business'" and that it reserved "the right to prove that it is not subject to the CSBA" in the event the court rejected its motion. *Id.* On May 30, 2008, the Commissioner filed a cross-motion for partial summary judgment on the Preemption Counts and also posited that the court could "assume, *arguendo*, that Block meets the definition of a credit services business." *Id.* at 336. The Commissioner's cross-motion sought a judgment to the effect that the NBA does not preempt the CSBA.

B.

On July 30, 2008, after conducting oral argument on the cross-motions, the district court filed its Memorandum Decision, which assessed only the Preemption Counts. The court, acting on the parties' suggestion that it assume that the CSBA

---

[4]The NBA, codified at 12 U.S.C. §§ 1 *et seq.*, vests in nationally chartered banks enumerated powers and "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 Seventh.

[5]In the Complaint, Block alleges federal question jurisdiction under § 1331 of Title 28, which grants a district court "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Because Block sought, inter alia, injunctive relief on the basis of preemption, its Complaint presents a federal question which the federal courts have jurisdiction to resolve. *See Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 642 (2002).

applies to Block, awarded limited summary judgment relief to each party. More specifically, the court concluded that the NBA preempts three of the CSBA's consumer-protection provisions, awarding partial summary judgment to Block with respect to those provisions. The court further concluded, however, that none of the CSBA's remaining provisions were preempted by the NBA and otherwise awarded partial summary judgment to the Commissioner on the Preemption Counts. The Memorandum Decision did not address the Coverage Count, nor did it assess the issue of whether the CSBA applies to Block, instead accepting the parties' assumption of such applicability. In that respect, the Memorandum Decision simply recited that, "[f]or purposes of the instant motions, the parties agree that the Court should assume that Block is a 'Credit Services Business' as that term is defined in . . . the CSBA." Memorandum Decision 4.

Thereafter, on August 28, 2008, the parties jointly filed a Stipulation of Dismissal, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), with respect to the Coverage Count.[6] The parties further requested therein that the district court enter final judgment pursuant to Rule 58(d). As in its supporting memorandum, however, Block reserved in the Stipulation of Dismissal "all its rights to bring an action seeking relief similar to that sought in [the Coverage Count] in Maryland state court with respect to the applicability of the Maryland [CSBA]." *H&R Block E. Enters., Inc. v. Turnbaugh*, No. 1:07-cv-01822 (D. Md. Aug. 28, 2008) (Docket No. 28). On September 3, 2008, the court, acting on the Stipulation of Dismissal, dismissed the Coverage Count without prejudice and entered final judgment on the Preemption Counts in accordance with its Memorandum Decision.

Two separate appeals resulted from the district court's Memorandum Decision. First, Block appealed from the judg-

---

[6]For whatever reason, the parties chose not to include the Stipulation of Dismissal in the Joint Appendix filed in this appeal.

ment to the extent that its motion for partial summary judgment on the Preemption Counts was denied. Second, the Commissioner cross-appealed the court's ruling with respect to the provisions of the CSBA that the court deemed to be preempted by the NBA. We possess jurisdiction pursuant to 28 U.S.C. § 1291.[7]

## II.

We review de novo a district court's award of summary judgment. *See PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 217 (4th Cir. 2009). We also review de novo an issue of subject matter jurisdiction, *see Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005), regardless of whether the district court analyzed the issue, *see Friedman's Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002) ("[W]hether we are presented with a live case or controversy is a question we may raise *sua sponte* . . . .").

## III.

In addressing these appeals, we must first determine whether the district court erred by not determining, as the first step in its preemption analysis, whether the CSBA applies to Block. Because we conclude that the court so erred, we vacate and remand without further addressing the propriety of the court's preemption rulings, so that the district court can

---

[7]On appeal, neither party initially addressed whether the CSBA applies to Block or whether the district court's assumption of applicability rendered its Memorandum Decision advisory. As a result, we alerted the parties to expect questions at oral argument relating to, inter alia, subject matter jurisdiction. In particular, we advised the parties to be prepared to address the implications of the Stipulation of Dismissal, including whether the parties were effectively seeking an advisory opinion and whether we have subject matter jurisdiction. After oral argument, we requested and received supplemental briefing on these issues, in which the parties primarily focused on whether Block possessed Article III standing to challenge the CSBA.

decide in the first instance whether Block is a "credit services business" under the CSBA.

## A.

The heart of Block's Complaint is that, by virtue of the Supremacy Clause of the Constitution, the NBA preempts the CSBA as applied to Block.[8] Federal law may preempt state law in three ways, denominated as express preemption, field preemption, and conflict preemption. *See College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 595–96 (4th Cir. 2005). For its contention that the NBA preempts the CSBA, Block invokes the doctrine of conflict preemption, "which occurs when a state law actually conflicts with federal law." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 191 (4th Cir. 2007) (internal quotation marks omitted).[9]

Assessing a conflict preemption claim requires "a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question [of] whether they are in conflict." *Chi. & N. W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317 (1981) (internal quotation marks omitted). In making this determination, a court "should not seek out conflicts . . . where none clearly exists." *College Loan Corp.*, 396 F.3d at 598 (internal quotation marks and alteration omitted). Rather, the state statute must clearly "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Chi. & N. W. Transp. Co.*, 450 U.S. at 317. Thus, it

---

[8]The Supremacy Clause renders the Constitution and laws of the United States "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

[9]In contrast to conflict preemption, express preemption occurs "when Congress has clearly expressed an intention to [preempt state law]," and field preemption takes place "when Congress has clearly intended, by legislating comprehensively, to occupy an entire field of regulation." *College Loan Corp.*, 396 F.3d at 595–96.

is settled that a federal court, before ruling that a federal law preempts a state statute, must determine that the state statute (here, the CSBA) stands as an obstacle to the objectives of the federal law (here, the NBA). *See United States v. Onslow County Bd. of Educ.*, 728 F.2d 628, 635 (4th Cir. 1984).

## B.

In order to properly dispose of the Preemption Counts, the district court was obligated to first assess whether the CSBA actually applies to Block. After all, if the CSBA is not applicable, its consumer-protection provisions cannot stand as an obstacle to what are, according to Block, federally authorized practices under the NBA.[10] To conclude that the NBA preempts certain of the CSBA's provisions, as applied to Block, without first assessing whether the CSBA actually applies to Block, amounts to "seek[ing] out conflicts . . . where none clearly exists." *College Loan Corp.*, 396 F.3d at 598. The CSBA's applicability was thus an essential element of each of the Preemption Counts, irrespective of whether the parties ultimately stipulated to the Coverage Count's dismissal.[11]

---

[10]The district court was not bound by the parties' suggestion that it should assume that the CSBA applies to Block, because a court is not required "to accept what in effect [is] a stipulation on a question of law." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993); *see also T I Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir. 1995) ("Issues of law are the province of courts, not of parties to a lawsuit . . . .").

[11]Block maintains that our decision in *Jimenez v. BP Oil, Inc.*, supports its contention that the district court appropriately assessed the Preemption Counts without first determining whether the CSBA applies to Block. *See* 853 F.2d 268 (4th Cir. 1988). Although in *Jimenez* we assumed the applicability of a Maryland statute and proceeded directly to the parties' preemption claims, the defendant there asserted a facial preemption challenge — predicated on field preemption — to the state statute. *See id.* at 272. Block, on the other hand, asserts an "as applied," conflict preemption challenge to the CSBA. The district court, of course, could not conclude that federal law preempts the CSBA, as applied to Block, without first determining whether the CSBA actually applies to Block. We thus find Block's reliance on *Jiminez* unpersuasive.

In asking the district court to proceed directly to the conflict analysis, without first independently determining whether the CSBA actually applies to Block, the parties were effectively seeking an advisory opinion. Had the court ruled against Block on the Preemption Counts by determining that the NBA does not in any respect preempt the CSBA, Block could then proceed to state court — as it reserved the right to do — and further litigate its contention (made in the Coverage Count) that the CSBA is wholly inapplicable to it. Indeed, even in the current posture of this litigation, nothing precludes Block from taking such an approach.[12] Thus, the court's ruling on the Preemption Counts, as set forth in its Memorandum Decision, was neither "binding" nor "conclusive" on Block, rendering its opinion advisory. *See Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 114 (1948).

The court need not have rendered such an advisory opinion, however, because the CSBA's applicability remains an unresolved and essential legal issue in deciding the Preemption Counts. Thus, the court could have — indeed, it *should* have — issued a binding and conclusive ruling by first determining whether the CSBA applies to Block. Because the court failed to do so, we must vacate the judgment and remand for a determination of whether Block is a "credit services business" under the CSBA.[13] If the court concludes that the CSBA applies to Block, it may then complete its assessment of the Preemption Counts.

---

[12]Emphasizing the unconventional nature of such an approach, the Stipulation of Dismissal of the Coverage Count would potentially make a Maryland state court a *de facto* appeals court for Block.

[13]The question of whether Block qualifies as a credit services business may well be predicated, at least in part, on factual and legal determinations best examined in the first instance by the district court. *See Caspary v. La. Land & Exploration Co.*, 707 F.2d 785, 788 n.5 (4th Cir. 1983) ("In determining state law . . . where there is no clear precedent, courts of appeal are disposed to accord substantial deference to the opinion of a federal district judge because of his [or her] familiarity with the state law which must be applied.").

## IV.

Pursuant to the foregoing, we vacate the judgment of the district court and remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*