**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 24-1861**

_____

OSVALDO FIGUEROA,

Plaintiff - Appellant,

v.

BUTTERBALL, LLC,

Defendant - Appellee.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge.  (5:20-cv-00585-D)

_____

Argued:  September 9, 2025                        Decided:  January 13, 2026

_____

Before RICHARDSON, RUSHING, and BENJAMIN, Circuit Judges.

_____

Affirmed by published opinion.  Judge Benjamin wrote the opinion, in which Judge Richardson and Judge Rushing joined.

_____

**ARGUED:**  Gilda Adriana Hernandez, LAW OFFICES OF GILDA A. HERNANDEZ, PLLC, Cary, North Carolina, for Appellant.  Scott David Anderson, WOMBLE BOND DICKINSON (US) LLP, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Matthew S. Marlowe, Hannah B. Simmons, LAW OFFICES OF GILDA A. HERNANDEZ, PLLC, Cary, North Carolina, for Appellant.  Hayden J. Silver, III, WOMBLE BOND DICKINSON (US) LLP, Raleigh, North Carolina, for Appellee.

_____

DEANDREA GIST BENJAMIN, Circuit Judge:

Disputes over turkey typically happen in late November and involve who gets a better portion of the meat. This is not that.

Osvaldo Figueroa, on behalf of himself and others similarly situated, sued Butterball, LLC (Butterball), a leading turkey producer, seeking payment of unpaid wages under the North Carolina Wage and Hour Act ("NCWHA") and the Fair Labor Standards Act (FLSA). The district court dismissed the NCWHA claims, and then granted summary judgment for Butterball on the FLSA claim. Pertinently, the district court found that Figueroa was a piece-rate employee rather than an hourly employee, which played a significant role in its conclusion that Butterball did not shortchange its turkey loaders' pay. Figueroa appealed. We conclude that the district court was correct in finding that Figueroa was a piece-rate employee and made no reversible error by dismissing the NCWHA and FLSA claims.

I.

Figueroa worked as a night-shift turkey loader for Butterball. Figueroa would start his work week on a Sunday evening and usually worked through Friday or Saturday morning of the same week. J.A. 133; J.A. 2582–93.[1] Turkey loaders were expected to catch and load turkeys onto trucks to be transported for slaughter. Some turkey loaders were also expected to fuel, sanitize, and wash the trucks before beginning the loading

_____

[1] Citations to "J.A." refer to the joint appendix filed by the parties. The J.A. contains the record on appeal from the district court. Page numbers refer to the "J.A. #" pagination.

2

process.  All turkey loaders kept track of their hours using a punch clock, and Butterball used the hours from the punch clock to calculate overtime pay.

Figueroa, like most employees, would receive paystubs.  The paystubs had an "earnings" section, which recorded three line items: "OT Hours," "LoadTrip," and "AttendHr."  Each line item contained two columns—one reflecting the number of hours recorded, and the other reflecting the amount paid.  For "OT Hours," the "hours worked" column would show 0.00, while the "amount paid" column listed the dollar amount of overtime wages paid for that period.  For "LoadTrip," the "hours worked" column also would show 0.00, but the "amount paid" column reflected the employee's total base pay for that pay period (not including overtime pay).  For "AttendHr," the "hours worked" column displayed the total number of hours the employee worked that period, while the "amount paid" column would show 0.00.

Figueroa alleges that Butterball failed to pay him and some of his fellow turkey loaders their promised hourly wages and overtime pay in violation of the NCWHA and the FLSA.

A.

On November 4, 2020, Figueroa filed an initial complaint, and on January 20, 2021, he filed an amended complaint.  *Figueroa v. Butterball, LLC*, 2021 WL 4203652, at *1 (E.D.N.C. Sept. 15, 2021) ("*Figueroa I*").  The district court dismissed his amended complaint without prejudice.  *Id.*  The district court first dismissed Figueroa's FLSA claim, finding that Figueroa failed to allege that he was paid hourly.  *Id.* at *3–6.  The district court reached this conclusion because Figueroa explicitly conceded in his original and first

3

amended complaint that Butterball told him that he would be paid through a piece-rate[2] compensation system with overtime. *Id.* at *6; J.A. 47.

The district court then went on to dismiss both of Figueroa's NCWHA claims. The district court explained that any attempt to seek relief for unpaid overtime through his payday claim would fail, as it would not be separate or distinct from his FLSA overtime claim. *Figueroa I*, WL 4203652, at *8. And while Figueroa's payday claim for the promised hourly rate was independent from his FLSA claim, it failed for similar reasons to his FLSA claim—he was not owed any additional overtime pay under the piece-rate compensation system. *Id.* Figueroa's second NCWHA claim was for a violation of the statute's notice requirements. *See* N.C. GEN. STAT. §§ 95-25.13(1)–(2) (2019). The district court again pointed to Figueroa's allegation that he was informed of piece-rate compensation to meet the first notice requirement and held that receipt of the pay stub was sufficient for the second notice requirement. *Figueroa I*, 2021 WL 4203652, at *9.

Accordingly, the district court dismissed Figueroa's amended complaint without prejudice and allowed Figueroa to proceed with a second amended complaint. *Id.*

B.

Figueroa filed a second amended complaint. In that complaint, Figueroa reversed his earlier admission that he had been informed of the piece-rate compensation system— the very allegation the district court had relied on to reject his FLSA and NCWHA claims.

---

[2] "In a piece-rate system a worker is paid by the item produced by him: so much per scarf, for example, if his job is to make scarves." *Avarado v. Corp. Cleaning Servs., Inc.*, 782 F.3d 365, 367 (7th Cir. 2015).

4

Figueroa's new allegation was that Butterball informed him that "he would be paid an hourly rate and a premium rate of time and one-half his regular hourly rate for all hours over 40 per week." J.A. 134. Because of that new allegation, and a pay stub Figueroa attached to the second amended complaint that allegedly identified a week where Figueroa was underpaid by "$20.58," the district court held that the FLSA claim "narrowly ekes across the plausibility line." *Figueroa v. Butterball, LLC*, 2022 WL 2980749, at *8 (E.D.N.C. July 27, 2022) ("*Figueroa II*"). However, the district court dismissed Figueroa's NCWHA claims a second time. *Id.* at *8–9. The district court focused on an inconsistency in Figueroa's attached pay stub to hold that he failed to state an NCWHA payday claim for failure to pay hourly wages. *See id.* at *8. The district court then reasoned that the notice violation claim still failed because Figueroa now alleged that he was orally informed of hourly pay, and he also alleged that his pay stubs unambiguously show that he was paid hourly. *Id.* at *9.

## C.

The district court conditionally certified the case as a FLSA collective action. Some opt-in plaintiffs then joined the case; the parties went to discovery on the FLSA claim; and both parties moved for summary judgment. The district court granted Butterball's motion for summary judgment and denied Figueroa's cross-motion for summary judgment. *Figueroa v. Butterball, LLC*, 2024 WL 3933859 (E.D.N.C. Aug. 23, 2024) ("*Figueroa III*").

The district court, with additional evidence from discovery, held that Figueroa was a piece-rate employee rather than an hourly employee. *Id.* at *5–8. The district court was

5

persuaded by an offer letter signed by Figueroa, which stated that Butterball would pay Figueroa "a load rate of $10.80." *Id.* at *5. Then based on that finding, the district court considered whether Butterball failed to pay proper overtime wages in violation of FLSA. The district court used pay stubs and timekeeping records to conclude that Butterball properly kept records of wages, hours, and other conditions of employment. *Id.* at *8–12.

Figueroa now appeals, representing only himself. J.A. 4065. He takes issue with the district court's rulings on the NCWHA claims at the motion to dismiss stage and the FLSA claim at the summary judgment stage. For the reasons below, we affirm the dismissal of Figueroa's NCWHA and FLSA claims.

## II.

We begin with the district court's dismissal of Figueroa's NCWHA claims under Fed. R. Civ. P. 12(b)(6). Both are affirmed. To the extent his payday claim seeks overtime pay mandated by the FLSA, it must proceed under the FLSA. And because discovery proved he was a piece-rate employee, the district court made no reversible error by dismissing the rest of his payday claim. We also affirm the district court's dismissal of Figueroa's NCWHA notice claim, as Butterball provided Figueroa with sufficient notice through the offer letter he signed and pay stubs he received.

## A.

We review a district court's dismissal under Rule 12(b)(6) de novo. *Strickland v. United States*, 32 F.4th 311, 347 (4th Cir. 2022) (citing *Skyline Restoration, Inc. v. Church Mut. Ins. Co.*, 20 F.4th 825, 829 (4th Cir. 2021)).

6

B.

The NCWHA's payday provision provides that "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday." N.C. GEN. STAT. § 95-25.6 (2024). Figueroa alleged that Butterball failed to pay "all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday." J.A. 147.

Figueroa insists that through his payday claim, he is entitled to unpaid overtime and promised hourly wages. He is not entitled to either.

1.

For Figueroa's overtime pay theory, Butterball argues that the NCWHA's exemption provision applies because Figueroa is seeking overtime pay. The NCWHA's exemption provision provides that the NCWHA provisions on overtime, minimum wage, and youth employment do not apply to "[a]ny person employed in an enterprise engaged in commerce or in the production of goods for commerce as defined in the Fair Labor Standards Act." N.C. GEN. STAT. § 95-25.14(a)(1) (2024). Figueroa (an individual covered by the FLSA) responds that the exemption does not apply to his payday claim that includes overtime pay because the payday provision is not explicitly listed in the NCWHA's exemption provision, like the minimum wage, overtime, and youth employment provisions are. Appellant's Br. (ECF No. 15) at 29–30 (hereinafter "Opening

7

Br.").[3]  He argues that the FLSA, not the NCWHA, entitled him to overtime pay and that he can pursue that unpaid overtime through the NCWHA payday provision, which he contends offers prejudgment interest not available under the FLSA.

We disagree with Figueroa's argument.  This court has recognized that "Congress prescribed exclusive remedies in the FLSA for violations of its mandates." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007) (citing *Kendall v. City of Chesapeake*, 174 F.3d 437, 443 (4th Cir. 1999)).  Thus, plaintiffs cannot "rely on the FLSA for their rights" and proceed to "invoke state law only as the source of remedies for the alleged FLSA violations." *Id.*, 508 F.3d at 193.  Here, that is precisely what Figueroa intends to do.  Regardless of the statutory vehicle, the underlying overtime wages that Figueroa seeks arise from the same alleged overtime violations.  Thus, to the extent that Figueroa seeks compensation for overtime pay mandated by the FLSA, his recourse is to the FLSA, not the NCWHA payday provision.

2.

Now to the extent Figueroa seeks relief under the payday claim for a failure to pay the promised hourly rate (or something other than overtime), such a claim is not barred by the FLSA but still fails because Figueroa was a piece-rate employee.[4]

---

[3] Page numbers for citations to ECF documents utilize the page numbers in the red header on each document.

[4] We agree with the well-established rule that a NCWHA payday claim must be "separate and distinct" from a plaintiff's FLSA minimum wage and overtime claims. *See Figueroa I*, 2021 WL 4203652, at *7 (collecting cases).

8

In *Figueroa I*, the district court dismissed the hourly wage payday claim without prejudice because Figueroa alleged that Butterball informed him that he would be paid through piece-rate compensation with overtime, his paystub reflected that compensation structure, and he accepted that pay for about two years. 2021 WL 4203652, at *6, *8. The district court concluded that Figueroa failed to state a claim that he was owed hourly wages under the NCWHA.

In *Figueroa II*, the district court dismissed Figueroa's hourly wage payday claim for a second time but on different grounds. 2022 WL 2980749, at *8. The district court could not rely on its earlier reasoning because Figueroa replaced his allegation regarding piece-rate compensation with an allegation that Butterball orally informed him that he would be paid hourly. *Id.* at *2. So the district court instead based its dismissal on Figueroa's pay stubs. The district court found that because Figueroa alleged that his promised hourly rate was $18.08, and none of the pay stubs in the record contain "the number 18.08 nor show that it was an hourly rate," his allegations concerning his promised hourly wages for his NCWHA claim were contradictory and failed to state a claim. *Id*. at *8.

The district court erred by dismissing Figueroa's payday claim the second time. Viewing Figueroa's allegations in the light most favorable to him, it is plausible that the phrase "Rate: 18.54" on his pay stub could have referred to an hourly rate. The district court was persuaded by the fact that Figueroa alleged that he was promised $18.08 an hour, but none of his pay stubs had the number 18.08—only 18.54. *Id*. at *8. However, Figueroa alleged, and the district court acknowledged, that his hourly wage "could go up to $18.54

9

an hour." *Id*. And while Figueroa may not offer a great reason as to why "Rate: 18.54" equates to an hourly rate, it is not a significant leap to say that the specified rate on the pay stub could have referred to an hourly rate.

Even so, an error by the district court does not automatically result in reversal. Federal Rule of Civil Procedure 61 provides that:

> [u]nless justice requires otherwise, no . . . error by the court or a party . . . is ground for . . . disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

FED. R. CIV. P. 61; *see also Sea "B" Mining Company v. Addison*, 831 F.3d 244, 253 (4th Cir. 2016) ("Reversal on account of error is not automatic but requires a showing of prejudice."). Further, we can affirm the dismissal of a complaint "on any basis fairly supported by the record." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 450 (4th Cir. 2011) (quoting *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 222 (4th Cir. 2002)).

Affirming the dismissal of Figueroa's hourly wage payday claim would not lead to any prejudice because discovery decisively showed that Butterball paid Figueroa under a piece-rate compensation system. Figueroa signed an offer letter explicitly stating that Butterball would pay him "a load rate of $10.80." J.A. 2499. A signed offer letter is a sure sign of agreement between an employer and employee on terms of employment and compensation. Figueroa cannot conjure a material dispute of fact by "recalling" that the offer letter stated something different, or by simply rejecting the offer letter "in its entirety." Reply Br. (ECF No. 18) at 21.

10

Butterball employee Russell Jones also testified that he informed prospective employees (including Figueroa) that they were paid "strictly per load rate," getting "paid by the number of loads that you participate in." J.A. 776. Several of the opt-in plaintiffs knew that they would be paid under this compensation system. J.A. 2284 ("I didn't look at no hours because I knew we didn't get paid by the hour."); J.A. 2409 ("I was told I was getting paid per load."). Combined with the paystubs' "LoadTrip" language, and the rebuttable evidence of Figueroa's first two complaints where he alleged that he was informed of the piece-rate compensation system, there is no genuine dispute of material fact of whether Figueroa and other opt-in plaintiffs were piece-rate employees.

Figueroa's argument that Butterball's online job posting and handbook provide evidence of hourly pay is unpersuasive. A job posting before Figueroa interviewed does not overcome the fact he signed an offer that stated he would be paid piece-rate, and accepted paystubs that displayed "LoadTrip" for years. Nor does a general handbook. As the district court noted, there was a failure to "forecast evidence that any plaintiff understood himself to be an hourly employee because of the job description or handbook." *Figueroa III*, 2024 WL 3933859, at *6.

Because discovery later revealed that Figueroa was a piece-rate employee, the district court's error in dismissing Figueroa's NCWHA payday claim was harmless. Figueroa's NCWHA payday claim could not have survived on summary judgment because he was indeed a piece-rate employee, not an hourly employee.

C.

11

Next, Figueroa's NCWHA notice violation claim also fails. He argues that Butterball did not comply with the NCWHA's notice provision. The notice provision required an employer to:

> (1) [n]otify its employees, orally or in writing at the time of hiring, of the promised wages and the day and place for payment; and (2) [m]ake available to its employees, in writing or through a posted notice maintained in a place accessible to its employees, employment practices and policies with regard to promised wages.

N.C. GEN. STAT. §§ 95-25.13(1)–(2) (2019).

First, by accepting Figueroa's allegation that Butterball told him he would be paid hourly, the district court did not err in determining that the first notice requirement—to orally inform employees of promised wages—was satisfied. *See Figueroa II*, 2022 WL 2980749, at *9.

Second, the district court held that the second notice requirement was met. *Figueroa II*, 2022 WL 2980749, at *9. It reasoned that when it viewed Figueroa's allegation that his pay stubs unambiguously showed hourly pay in the light most favorable to him, the second notice requirement was met. *See id.*; *see also* 13 N.C. ADMIN. CODE 12.0805(b) (1999) ("[a]cceptable means of ensuring that the policies and practices are readily accessible to the employees include" "[p]roviding employees with payroll records, including *check stubs*" (emphasis added)). For the same reasons described in section II.B.2., we find that any error made by the district court was harmless in light of the record, and the premature dismissal of the notice claim makes no difference.

Accordingly, we affirm the dismissal of Figueroa's NCWHA claims.

12

III.

We turn next to the district court's dismissal of Figueroa's FLSA claim on summary judgment. We hold that the district court correctly determined that Figueroa was a piece-rate employee, that his workweek ran from Sunday to Saturday and none of his hours were improperly shifted, and that Butterball properly calculated and compensated his overtime pay. Lastly, we also hold that there was a mutual understanding between Butterball and Figueroa that employees would be compensated for all hours worked. Accordingly, we affirm the district court.

A.

We review a district court's grant of summary judgment de novo. *Emmons v. City of Chesapeake*, 982 F.3d 245, 250 (4th Cir. 2020). "Summary judgment is appropriate where there is no dispute of material fact and judgment is proper as a matter of law." *Id.*

B.

Under the FLSA, a covered employer must pay a covered employee at least minimum wage for the hours worked during each workweek. *See* 29 U.S.C. § 206. The FLSA requires a covered employer to pay a covered employee overtime for all hours worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1). The FLSA "does not require employers to compensate employees on an hourly basis; their earnings may be determined on a piece-rate, salary, commission, or other basis." 29 C.F.R. § 778.109. Determining the hours worked and the compensation earned by pieceworkers on a weekly basis is necessary because the FLSA "takes a single workweek as its standard and does not permit averaging of hours over 2 or more weeks." 29 C.F.R. § 778.104.

13

The FLSA also creates a burden for covered employers "to keep proper records of wages, hours, and other conditions and practices of employment," because the employer is in a better position than the employee to do so. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); 29 U.S.C. § 211(c). If an employer violates their statutory duty to keep proper records, the court employs a burden-shifting framework that allows employees without access to accurate timekeeping records to rely on their own testimony to meet their burden of proof. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016); *see also Mt. Clemens*, 328 U.S. at 687–88. The employer may then come forward with evidence of the precise amount of work performed or with evidence negating the inferences drawn from the employee's evidence. *See Mt. Clemens*, 328 U.S. at 687–88.

1.

To determine how to calculate Figueroa's overtime wages, we must first answer whether Figueroa was a piece-rate or hourly employee. For the reasons stated in section II.B.2., we find that there is no genuine dispute of material fact as to whether Figueroa was a piece-rate employee.

2.

We turn next to whether Butterball properly paid Figueroa his overtime wages in accordance with the FLSA. We conclude that it did. To calculate overtime wages for piece-rate employees, the FLSA provides the following:

> When an employee is employed on a piece-rate basis, the regular hourly rate of pay is computed by adding together total earnings for the workweek from piece rates and all other sources (such as production bonuses) and any sums paid for waiting time or other hours worked (except statutory exclusions). This sum is then divided by the number of hours worked in the week for

14

which such compensation was paid, to yield the pieceworker's "regular rate" for that week. For overtime work the pieceworker is entitled to be paid, in addition to the total weekly earnings at this regular rate for all hours worked, a sum equivalent to one-half this regular rate of pay multiplied by the number of hours worked in excess of 40 in the week.

29 C.F.R. § 778.111(a).

Take one of Figueroa's workweeks from January 2018 as an example. Below are the days and shifts from that January 2018 workweek:

| Days: | Dates: | Clocked in at: | Clocked out at: | Hours[5]: |
|---|---|---|---|---|
| Sunday to Monday | 1/21/18– 1/22/18 | 7:21 p.m. | 6:33 a.m. | 11.20 |
| Monday to Tuesday | 1/22/18– 1/23/18 | 7:55 p.m. | 7:27 a.m. | 11.53 |
| Tuesday to Wednesday | 1/23/18– 1/24/18 | 7:32 p.m. | 8:42 a.m. | 13.17 |
| Wednesday to Thursday | 1/24/18– 1/25/18 | 6:52 p.m. | 6:20 a.m. | 11.47 |
| Thursday to Friday | 1/25/18– 1/26/18 | 9:18 p.m. | 8:31 a.m. | 11.22 |
| Friday to Saturday | 1/26/18– 1/27/18 | 7:51 p.m. | 3:34 a.m. | 7.72 |
| Saturday to Sunday | 1/27/18– 1/28/18 | N/A | N/A | 0 |
| Sunday to Monday | 1/28/18– 1/29/18 | 6:33 p.m. | 9:59 a.m. | 15.43 |

J.A. 2585.

To calculate Figueroa's overtime, Butterball added Figueroa's time worked from Sunday, January 21, 2018 to Saturday, January 27, 2018, which totals to 66.31 hours. As

---

[5] The hours listed are in decimal form to the hundredths place.

the FLSA directs, Butterball then divided the total earnings ($1,184.64) by the number of hours worked (66.3), which would amount to the pieceworker's "regular rate" for that week ($17.87). *See* 29 C.F.R. § 778.111(a). To calculate overtime pay, Butterball then subtracted 40 hours from the total hours worked (26.31 hours) and multiplied that time by half of the "regular rate" ($8.93). *See id.* Under the FLSA's regulations, Butterball correctly found that Figueroa was entitled to $235.016 in overtime wages, as shown by Figueroa's paystub that indicated $235.02 in overtime pay.[6] J.A. 3580–81.

However, Figueroa argues that Butterball did not pay him the overtime wages he earned because Butterball applied the wrong workweek definition when calculating overtime hours. He contends that his workweek started at 8:45 p.m. on Sunday and ended at 8:44 p.m. the following Sunday. As a result, Figueroa insists that Butterball's records are inaccurate, asserting that the company improperly shifted his hours. First, we agree with the district court's conclusion that Figueroa's workweek was from Sunday to Saturday. In the second amended complaint, Figueroa himself alleged that "he started his week on Sunday evening and worked through Saturday morning at 9:30 a.m." J.A. 133. Figueroa confirmed that fact in his deposition. J.A. 1485. Butterball also confirmed that any shift that started before 8:45 p.m. on a Sunday would "be included in that week's piece-rate overtime calculation." J.A. 1649. Figueroa argues that Butterball's associate handbook provided that the "pay period begins on Sunday at 20:45 and ends on Sunday

---

[6] The district court also ran several other paystubs through the FLSA's regulations and found that there was no underpayment. *See Figueroa III*, 2024 WL 3933859, at *11–12. We find also that the district court did not err in reviewing and calculating Figueroa's overtime pay from other pay stubs.

20:44," J.A. 871, but he fails to show how the associate handbook would apply to night-shift turkey loaders.

More importantly, Figueroa failed to produce evidence of Butterball shifting any hours from one week to another in contravention of the FLSA and its regulations. *See* 29 C.F.R. § 778.104. Figueroa does point the court to a shift where he worked 15.43 hours from Sunday, January 28, 2018 to Monday, January 29, 2018. Opening Br. at 53. He contends that because the shift was missing from the paystub for that January 2018 week, he worked 15.43 hours greater than the number of hours for which he was allegedly paid. *Id.* But Figueroa's example does not demonstrate that Butterball was shifting his hours in violation of the FLSA. And further, adding the 15.43 hours into that workweek would mean that the January 2018 paystub in question would account for an eight-day workweek—from Sunday, January 21, 2018 to Monday, January 29, 2018. We reject Figueroa's attempt to stuff an extra day in his workweek.

Accordingly, Figueroa fails to identify anything in the record showing that Butterball improperly reallocated his time from one week to another in violation of the FLSA.

3.

Next, Figueroa contends that Butterball's records fail to capture all hours worked because Butterball required him to perform pre-shift duties before clocking in.

Employers must compensate employees for performing "activities which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a)(2). The Supreme Court has consistently interpreted "the term 'principal activity

17

or activities' to embrace all activities which are an 'integral and indispensable part of the principal activities.' " *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33 (2014) (brackets removed) (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29–30 (2005)).  An activity is "integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id*.

Figueroa alleges that before clocking in, he and others were required to fuel and sanitize the turkey-loading trucks, and pick up water, food, and supplies from the store. Opening Br. at 49–50.  Fueling and sanitizing the turkey trucks are integral to the principal activity of catching and loading turkeys.  Without fuel, employees could not reach the turkey loading sites, and proper sanitization is necessary to preserve the integrity of the turkeys.

The district court in *Figueroa III* disregarded the pre-shift duties because they were performed "sporadic[ally]," 2024 WL 3933859, at *9, but the record shows otherwise for the opt-in plaintiffs.  Opt-in plaintiff Juan Lazo testified that before starting his shifts, he would fill the van with gas, pick up water and ice for the job, and disinfect the van, which would take up to 30 minutes. J.A. 2132–34; 2148.  He was not allowed to clock in while doing those tasks. *Id*.  Opt-in plaintiff David Webb testified that 15 minutes before his shift, he would clean out the van, ensuring the loader was strapped down, and was not allowed to clock in for it. J.A. 2261–62.  Opt-in plaintiff Chet Peterson declared that five days a week, he would arrive 45 minutes early to prep the crew cab and loader equipment

18

and then drive the crew cab to the meeting spot for the rest of the loaders. J.A. 3542. Only when he arrived at the meeting spot was he allowed to clock in. *Id*.

However, the record does not show the same for Figueroa.[7] While several opt-in plaintiffs testified to regularly performing integral pre-shift tasks, Figueroa himself did not. And because there is no evidence in the record that Figueroa *himself* regularly performed integral pre-shift tasks, *his* claim for unpaid overtime for pre-shift work cannot survive summary judgment.

4.

Lastly, Figueroa argues that "if the employer fails to make clear to employees that the piece-rate compensation system is intended to compensate for both productive and nonproductive hours, the employer must compensate employees' overtime at the time-and-a-half rate, rather than the half-time rate." Opening Br. at 43.

Section 778.318(c) provides that "it is permissible for the parties to agree that the pay the employees will earn at piece rates is intended to compensate them for all hours worked, the productive as well as the nonproductive hours." 29 C.F.R. § 778.318(c). As the Fifth Circuit noticed, "FLSA regulations do not specify what is required for the

---

[7] Figueroa represents only himself in this appeal. The Federal Rules of Appellate Procedure provide that a notice of appeal must "specify the party or parties taking the appeal by naming each one in the caption or body of the notice." FED. R. APP. P. 3(c)(1)(A). "[A]n attorney representing more than one party may describe those parties with such terms as 'all plaintiffs,' 'the defendants,' 'the plaintiffs A, B, et al.,' or 'all defendants except X.'" *Id*. In Figueroa's notice of appeal, he represents that he is the only one appealing. *See* J.A. 4065. The only plaintiff he mentions is "Plaintiff Osvaldo Figueroa," and the title of his notice of appeal is "*Plaintiff's* Notice of Appeal." *Id*. (emphasis added). Thus, the opt-in plaintiffs' allegations cannot help Figueroa survive summary judgment.

19

existence of such an agreement, and there is little caselaw addressing the matter." *Lockhart v. Republic Services, Inc.*, 2021 WL 4955241, at *6 (5th Cir. Oct. 25, 2021). However, *Lockhart* found a United States Department of Labor guidance letter instructive. *Id.* (citing U.S. Dep't of Lab., Wage & Hour Div., Opinion Letter (Nov. 30, 2020)); J.A. 3864–67. The letter stated that the "mutual understanding requirement under § 778.318(c) should be interpreted to be consistent with the 'clear and mutual understanding' requirement under § 778.114." J.A. 3866. "[I]t is enough that the employer and employee mutually understand that piece-rate earnings are intended to compensate the employee for all hours worked." *Id.* at 3866–67. This understanding "need not be in writing, but rather, may be inferred from the parties' conduct." *Id.* at 3865.

Figueroa relies on *Espenscheid v. DirectSat USA, LLC*, 2011 WL 10069108 (W.D. Wis. Apr. 11, 2011), a district court case cited by *Lockhart*, and the Department of Labor guidance letter. The *Espenscheid* court found that there were "disputed issues of fact whether defendants and plaintiffs agreed that the piece-rate system would compensate plaintiffs for both productive and nonproductive time." *Espenscheid v. DirectSat USA, LLC*, 2011 WL 10069108, at *29 (W.D. Wis. Apr. 11, 2011). The district court relied on the fact that "defendants *changed* the manner of compensation for certain nonproductive tasks by paying technicians an hourly wage for certain tasks." *Id.* at *28 (emphasis added). It also noted that several plaintiffs "complained to supervisors about not being paid for nonproductive tasks." *Id.* at *29.

Here, there is no evidence of turkey loaders differentiating between productive and nonproductive time. Nor is there any evidence that Butterball intended to compensate its

20

turkey loaders differently for productive and non-productive activities or communicated as much to its employees. *See Lockhart*, 2021 WL 4955241, at *6 (persuaded by pay sheets that did not require drivers to differentiate between productive and nonproductive time). Butterball states that "Figueroa's per-load pay would compensate him for his entire shift, regardless of how much of the shift was spent loading turkeys and how much of the shift was spent traveling or waiting." Appellee's Br. (ECF No. 17) at 38. Unlike the plaintiffs in *Espencheid*, Figueroa does not argue that he was compensated less for the non-productive hours he worked. And unlike the defendant in *Espencheid*, Butterball did not change the manner of compensation. Without facts to show otherwise, a mutual understanding that the piece-rate compensation system was meant to cover non-productive tasks can be inferred from Butterball's policy and practice to compensate its turkey loaders for their entire shift by per-load pay.

Further, Figueroa's assertion that Butterball must compensate his overtime hours at the time-and-a-half rate stems from a misunderstanding of 29 C.F.R. § 778.318. The statute only allows for overtime compensation at a time-and-a-half rate under § 778.318(b), which controls when parties "agree to compensate nonproductive hours worked at a rate (at least the minimum) which is lower than the rate applicable to productive work." 29 C.F.R. § 778.318(b). There is no record or evidence of such an agreement or arrangement here.

Accordingly, Figueroa's argument that Butterball violated the requirements of 29 C.F.R. § 778.318(c) falls short.

21

IV.

Figueroa has not shown reversible error, and thus the district court's orders are

*AFFIRMED.*